UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

NADYA A. ROBINETTE,           )
                              )
    Plaintiff,                )
v.                            )          Civil Case No.
                              )          2:12-cv-145-JMH
MICHAEL J. ASTRUE,            )
COMMISSIONER OF SOCIAL        )   **MEMORANDUM OPINION & ORDER**
SECURITY,                     )
                              )
    Defendant.                )


*** 

    This matter is before the Court upon cross-motions for summary judgment on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits.[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I.  OVERVIEW OF THE PROCESS AND THE INSTANT MATTER**

    The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

    1.  An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

    2.  An individual who is working but does not have a "severe" impairment which significantly

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (*citing* 20 C.F.R. § 404.1520). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined under steps one and two of the analysis that Plaintiff was insured during the relevant time period and has not engaged in substantial gainful activity since the alleged onset date

of Plaintiff's disability. (Tr. 22). Next, under step two, the ALJ found that Plaintiff has the following severe impairments: bilateral hearing loss, major depressive disorder, and panic disorder without agoraphobia. (Tr. 22). After deciding that Plaintiff's impairments do not equal a listed impairment under step three, the ALJ proceeded to step four and determined that Plaintiff has a residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (Tr. 23—25). Although the ALJ found that Plaintiff cannot perform her past relevant work with this residual functional capacity, he determined with the assistance of a vocational expert that other work exists in significant numbers nationally and across the state that Plaintiff can perform in her condition. (Tr. 28—29). Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. (Tr. 29).

In this appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence of record for three reasons. First, she claims that the ALJ erred by failing to afford significant weight to Dr. Adrienne Swift's medical opinion, a one-time psychological consultative examiner. Second, she claims that the ALJ did not provide sufficient reasons for discounting Plaintiff's

credibility.  Third, Plaintiff argues that the ALJ erred by using the term "significant auditory comprehension" in his hypothetical question posed to the VE, as she insists it was vague and undefined.  Alternatively, Plaintiff argues that this Court should remand her case for further administrative proceedings because Plaintiff possesses new and material evidence that was not before the ALJ at the hearing.  The Court has considered all arguments by Plaintiff and the Commissioner as well as the administrative record, and, for the reasons stated below, affirms the Commissioner's decision.

## II.  STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the court "does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence" is "more than a scintilla of evidence, but less

4

than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

## III. FACTUAL AND PROCEDURAL BACKGROUND

At the time of Plaintiff's hearing, she was a fifty-one year old female with an eleventh grade education. (Tr. 39—40). She has past work experience as customer service and sales representatives, among other odd jobs. (Tr. 175). Plaintiff filed for disability under Title II on October 7, 2008, alleging disability beginning on October 1, 2008. (Tr. 20). After her claim was denied both initially and upon reconsideration, Plaintiff requested a hearing with the ALJ, which took place on July 15, 2010. (Tr. 20). The ALJ issued an unfavorable decision denying disability on August 26, 2010. (Tr. 30).

The ALJ considered Plaintiff's claim in accordance with the five-step sequential evaluation process. (Tr. 20—30). At step three, the ALJ found that Plaintiff has three severe medical impairments, namely bilateral hearing loss, major depressive disorder, and panic disorder without agoraphobia. (Tr. 22). After considering Plaintiff's allegations of pain, subjective reports of symptoms, daily activities, treating physician's opinion, and the state consultative examiners' opinions, the ALJ determined that

5

while Plaintiff is capable of medium work, she is not capable of returning to any of her past jobs. (Tr. 28).

In coming to this opinion, the ALJ assigned significant weight to the opinion of Dr. Cindy Matyi, a state agency reviewing psychologist who opined that while Plaintiff has moderate limitations in social functioning, she is capable of working in an environment with minimal interaction and without close supervisory scrutiny. (Tr. 27). In adopting this assessment, the ALJ partially rejected the medical opinion of Dr. Adrienne Elizabeth Swift, a consultative examiner whom Plaintiff visited one time in December 2008. (Tr. 27). Specifically, the ALJ accepted Dr. Swift's opinion to the extent that it concurred with Dr. Matyi's opinion. (Tr. 27). However, instead of accepting Dr. Swift's opinion that Plaintiff has marked impairments in her ability to tolerate stress and pressures associated with day-to-day work activity and in her ability to relate to others, he incorporated these communication difficulties into his overall assessment of Plaintiff's residual functional capacity and the types of jobs she is capable of performing. (Tr. 27—29).

When determining if there exist any jobs in the national economy for someone with Plaintiff's impairments under step five of the analysis, the ALJ sought the

6

assistance of a neutral vocational expert ("VE"). (Tr. 28–29). The ALJ posed a hypothetical question to the VE in which he asked whether a hypothetical person with Plaintiff's limitations, including "significant auditory comprehension" difficulties, could perform her relevant prior work. (Tr. 65). The VE indicated that such a person could not return to Plaintiff's relevant prior work, but could find work in areas like hand packing, light inspecting, and cleaning/housekeeping. (Tr. 67). The ALJ agreed and concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 18).

Subsequent to the ALJ's decision, Plaintiff received x-ray results revealing that Plaintiff has mild disc space narrowing throughout her lumbar spine and mild rightward scoliosis centered around her mid-lumbar spine. (Tr. 314). Plaintiff also received MRI results revealing mild to moderate disc space narrowing at L5-S1, with a moderate-sized disc spur complex noted laterally on the right and minimal extension into the right lateral foraminal region resulting in mild right foraminal narrowing. (Tr. 315).

**IV. ANALYSIS**

    **A.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION THAT PLAINTIFF IS NOT DISABLED UNDER THE SOCIAL SECURITY ACT.**

      Plaintiff first argues that the ALJ did not give appropriate deference to Dr. Swift's opinion. This Court finds that Plaintiff's first argument is unwarranted. Under the "treating physician" rule, an ALJ is required to give controlling weight to a treating physician's opinion when deciding whether an individual is disabled unless it is ill-supported by medical evidence or the case record. 20 C.F.R. § 404.1527(d)(2). Generally, if the ALJ chooses to disregard the treating physician's opinion, then he must give specific reasons for doing so. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996) (a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion . . ..").

      Notably, however, "the SSA requires ALJs to give reasons for only *treating* sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Id.* (quoting 20 C.F.R. §

404.1502). This regulation contemplates an "ongoing treatment relationship" that does not generally encompass a consultative physician who sees a patient only once. *Id.* (holding that a physician was not a treating source when he only saw the patient one time).

Plaintiff argues that the ALJ in this case failed to give valid reasons for partially rejecting the opinion of the consultative one-time examiner, Dr. Swift, in favor of the reviewing state-agency consultant, Dr. Matyi. However, because neither Dr. Matyi nor Dr. Swift were treating sources since Dr. Matyi was a reviewing psychologist and Dr. Swift a one-time consultative examining psychologist, the ALJ was not required to give *any* reasons for assigning reduced weight to Dr. Swift's opinion.

However, contrary to Plaintiff's argument that the ALJ rejected Dr. Swift's opinion, the ALJ in reality accepted the majority of it since it was mostly consistent with Dr. Matyi's analysis. (Tr. 27). In fact, the only portion of Dr. Swift's opinion that the ALJ specifically rejected was her conclusion that Plaintiff has marked limitations in her ability to relate to others and to withstand the stress and pressure associated with day to day work activity. (Tr. 27; D.E. 10, Plaintiff's Summary Judgment Motion, at 11). Even so, the ALJ did not truly

9

reject this conclusion since he incorporated Plaintiff's communication difficulties into his overall analysis of Plaintiff's residual functional capacity by "limiting her interaction and need for auditory comprehension" in a working environment. (Tr. 27); *see Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535—36 (6th Cir. 2001) (holding that it was harmless error for the ALJ to fail to address a limitation when he incorporated the limitation anyway when determining whether the claimant could find other work). This conclusion by the ALJ is perfectly logical and supported by substantial evidence in the record. Therefore, despite Plaintiff's argument otherwise, the ALJ committed no error.

Next, Plaintiff argues that the ALJ erred in finding Plaintiff's credibility questionable with regard to her statements concerning the intensity, persistence and limiting effects of her symptoms. (Tr. 26). An "ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). In this case, the ALJ's reasons for discounting Plaintiff's credibility were supported by substantial evidence in the

record; therefore, deference to his decision is appropriate.

For example, Plaintiff first argues that the ALJ erred in considering Plaintiff's lack of treatment for her mental health and back problems in his credibility determination since Plaintiff is without health insurance and claims she could not afford to see a specialist or get all of her prescriptions filled. (D.E. 10, Plaintiff's Summary Judgment Motion, at 15). However, it is not *prima facie* improper to consider the absence of contemporaneous treatment evidence for an allegedly disabling condition when evaluating a claimant's credibility. *Strong v. Soc. Sec. Admin.*, 88 Fed. App'x 841, 846 (6th Cir. 2004) (*citing Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986)). Indeed, "[i]n the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment" and the "failure to do so may cast doubt on a claimant's assertions of disabling pain." *Id.*

Moreover, because the ALJ based his negative credibility finding on a variety of factors, he did not err in considering her failure to seek treatment in his credibility determination regardless of Plaintiff's financial situation. *See Davis v. Astrue*, No. 08-122-GFVT,

11

2009 WL 2901216, at *1 (E.D. Ky. 2009) (the "ALJ's failure to consider Davis's ability to afford medical treatment was a harmless error because the ALJ based Davis's credibility on various factors, not just on Davis's lack of frequent medical treatment."). Specifically, the ALJ also considered Plaintiff's ability to purchase cigarettes despite her claims that she could not afford medication or treatment, self-reported daily living activities, social activity, and prior work history. (Tr. 26).

Plaintiff claims these additional reasons given to discount Plaintiff's credibility were also improper considerations. However, this Court finds that all of the reasons given by the ALJ were properly used to justify his adverse credibility finding. For example, contrary to Plaintiff's argument that an ALJ may not consider a claimant's refusal to quit buying cigarettes in a credibility finding, the Sixth Circuit has specifically held that "the cost of cigarette smoking can be considered when a claimant asserts an inability to afford appropriate medical care." *Anglian v. Astrue*, No. Civ.A 10-117-GWU, 2011 WL 147571, at *5 (E.D. Ky. 2011) (*citing Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)).

Further, because Plaintiff alleges an intensity and persistence of pain that is inconsistent with her hearing testimony, the ALJ also appropriately considered Plaintiff's self-reported activities of daily living, social interaction and work history when discounting her credibility. (Tr. 26; 50—51). For example, while Plaintiff claims on one hand that she has such pain and mental discomfort that she cannot engage in any type of work whatsoever, she readily admitted at the hearing that while she cannot vacuum or mop, she does her best at cleaning the house, puts laundry in the washer, occasionally cooks, takes care of all of her own personal grooming, and is capable of carrying light bags when she occasionally goes grocery shopping with her husband. (Tr. 50—51).

Plaintiff also testified that she gets along okay with people when she is around them, that she has family other than her husband that she sees, and that she has friends. (Tr. 50). Finally, the ALJ correctly noted that Plaintiff has a significant work history with sales jobs requiring significant public interaction. (Tr. 26). Therefore, as a result of Plaintiff's testimony, the ALJ appropriately discounted her credibility to the extent that her involvement in these daily and social activities are

inconsistent with her complaints concerning the intensity and persistence of her pain. *See Walters v. Sec'y of Health & Human Servs.*, 127 F.3d 525, 532 (6th Cir. 1997) (*citing Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments"); *see also* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record . . ..").

Plaintiff argues that under the Social Security Regulations, a claimant's personal grooming habits, social interaction, and ability to engage in household tasks are not substantial gainful activity. (D.E. 10, Plaintiff's Summary Judgment Brief, at 10); 20 CFR 404.1572(c). While this statement is true, it is completely irrelevant to the ALJ's credibility finding. Instead, this general rule pertains to step two of the analysis when the ALJ determines whether or not a claimant has engaged in substantial gainful activity since the alleged onset date of her disability. Consistently, the ALJ did not consider these factors when determining that Plaintiff has not engaged in substantial gainful activity since October 1, 2008. (Tr. 22). Plaintiff's argument on this issue is

14

without merit, and, overall, substantial evidence supports the ALJ's finding that Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible.

Third, and finally, Plaintiff also argues that the ALJ erred when he asked the VE in a hypothetical question if a person with Plaintiff's limitations, prior work experience, and "significant auditory comprehension" difficulties is capable of returning to her past relevant work. Specifically, Plaintiff argues that the phrase "significant auditory comprehension" is vague and claims that there is no indication in the record that the VE understood what the term meant.

However, this Court is not convinced that the phrase "significant auditory comprehension" was unduly vague since the record reflects that everyone present at the hearing understood its meaning. For example, the VE responded without hesitation to the ALJ's question that Plaintiff is incapable of returning to her past relevant work because of her hearing difficulties. Moreover, Plaintiff's attorney did not object to the phrase, ask for clarification, nor address the phrase during her cross-examination of the VE, indicating that she, too, understood its meaning. While it is well-settled that an ALJ must ask a vocational expert

questions that "accurately portray[ ] [a plaintiff's] individual physical and mental impairments," and a case must be remanded for further proceedings if the ALJ's questions fail to meet this standard, Plaintiff has not presented sufficient evidence that her ailments were improperly portrayed to the VE. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Therefore, Plaintiff's third objection does not warrant remand.

### B. PLAINTIFF'S ADDITIONAL EVIDENCE OBTAINED AFTER HER HEARING DOES NOT WARRANT REMAND.

Plaintiff argues that the MRI and x-ray that she procured after her hearing with the ALJ constitutes new and material evidence under 42 U.S.C. § 405(g). She thus argues that her case should be remanded for further administrative proceedings. This Court disagrees.

While "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review," a "district court can, however, remand the case for further administrative proceedings . . . if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding."

*Foster*, 279 F.3d at 357 (*citing Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)).

"For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding,'" and "is 'material' only if there is a 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (*citing Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). Further, "a claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984)). "The burden of showing that a remand is appropriate is on the claimant." *Id.* (*citing Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

Plaintiff fails to meet her burden to show that remand is appropriate primarily because she fails to show good cause for failing to acquire her x-ray and MRI prior to the administrative hearing. *See Merida v. Astrue*, 737 F. Supp. 2d 674, 684 (E.D. Ky. 2010) (Because the plaintiff

offered "absolutely no explanation why the medical tests, the results of which he assert[ed] justif[ied] remand, could not have been performed prior to the hearing when there was ample opportunity to do so," he failed to satisfy the good cause test of § 405(g)); *Brace v. Comm'r of Soc. Sec.*, 97 Fed. App'x 589, 592 (6th Cir. 2004) (claimant could not show good cause warranting remand under § 405(g) when he received medical test results after the hearing from tests conducted one week prior to the ALJ hearing); *Oliver*, 804 F.2d at 966 ("in order to show good cause the complainant must give a valid reason for his failure to obtain evidence prior to the hearing.").

Indeed, Plaintiff gives absolutely no reason in her brief as to why she failed to procure the x-ray and MRI before the hearing. (D.E. 10, Plaintiff's Summary Judgment Brief, at 21). Instead, Plaintiff argues that the good cause requirement is met because she obtained the MRI and the x-ray prior to the ALJ's final decision, albeit after her hearing, and, thus, could not get the results to the ALJ before his decision since they were not in yet. (D.E. 10, Plaintiff's Summary Judgment Brief, at 21). However, the law clearly requires Plaintiff to give a justifiable reason for failing to have the procedures completed before the hearing, which Plaintiff undeniably did not do.

Although she does not say as such in her brief, the Court presumes that Plaintiff's excuse for failing to get an x-ray and MRI prior to the hearing is her lack of health insurance and her hope that the ALJ would order a physical consultative exam so that costs of the desired procedures would be covered. (Tr. 227—28). However, this justification, if indeed true, does not constitute good cause in this instance, since, despite being aware of her back pain since she was a child, Plaintiff failed to submit a request to obtain a physical consultative examination to the ALJ until the day before the hearing. (Tr. 46, 227). Moreover, there is no evidence in the transcript indicating that Plaintiff's attorney requested that the record remain open until such time as other evidence could be added. *See Willis*, 727 F.2d at 554 (good cause not shown when "the transcript of the hearing before the ALJ clearly indicat[ed] that counsel for the Appellant did not seek to have the record remain open until such time as other evidence could be made a part of the record."). Thus, Plaintiff cannot meet the good cause requirement with this unspoken justification.

It is also doubtful that Plaintiff has shown that the x-ray and MRI are material, as it seems very unlikely that there exists a reasonable probability that Plaintiff would

19

have received a different result had the x-ray and MRI been available to the ALJ prior to the hearing.  At the hearing, the ALJ determined – and this Court agrees – that there was not enough medical evidence on the record to warrant a consultative physical examination for Plaintiff's back pain.  (Tr. 53).  Indeed, the only objective medical evidence on the record revealing Plaintiff had back pain were a few complaints to her treating physician and a Lortab prescription.  It seems highly unlikely that an x-ray and a MRI showing mild to moderate disc space narrowing, mild rightward scoliosis, a moderate-sized disc spur complex, and minimal extension into the right lateral foraminal region would have changed the ALJ's mind on this issue.  (Tr. 315).  Regardless, Plaintiff failed to meet the good cause requirement, and remand is inappropriate on that ground alone.

In conclusion, the objective evidence in this case did not establish that Plaintiff is disabled within the meaning of the Social Security Act, and substantial evidence supports the ALJ's decision.

**IV. CONCLUSION**

**IT IS ORDERED:**

(1) that Plaintiff's Motion for Summary Judgment [DE 10] is **DENIED**; and

(2)  that Defendant's Motion for Summary Judgment [DE 12] is **GRANTED**.

This the 29th day of November, 2012.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge